UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Civil Case No. 14-20162
                                                  Honorable Linda V. Parker

v.

ADAM LOWE,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 18)**

**I.**

This is a criminal case. Defendant Adam Lowe ("Defendant") is charged with: distribution of child pornography under 18 U.S.C. § 2252A(a)(2); receipt of child pornography under 18 U.S.C. § 225A(a)(2); and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 14.) Now before the Court is Defendant's motion to suppress evidence. (ECF No. 18.) Defendant seeks to suppress the oral and written statements he made to officers during the execution of the search warrant at 1474 North Irish Road, Davison, Michigan; the computer Defendant delivered to officers the day after the search warrant was executed; and any derivative evidence. (Def.'s Mot., ECF No. 18 at Pg. ID 39.) In his motion, Defendant asserts that his statements were obtained in violation of his *Miranda*

1

rights while he was in custody; and alternatively, that they were involuntary. (*Id.* at Pg. ID 40.) Defendant also argues that the laptop and subsequent search of the laptop should be suppressed because seizure of the computer was derivative of the unlawful search conducted the previous day and alternatively, Defendant's conveyance did not constitute voluntary consent. (*Id.*) An evidentiary hearing was held on August 21, 2014. (ECF No. 24.) For the reasons that follow, Defendant's motion is **DENIED**.

## II.

On November 21, 2011, the Michigan State Police, Internet Crimes Against Children (ICAC) task force conducted an investigation in which it accessed a peer-to-peer internet file-sharing network and observed that a computer with Internet Protocol address (IP address) 24.236.239.129, was sharing files of child pornography. (Compl., ECF No. 2 at Pg. ID 3.) The internet provider, Charter Communications, Inc., revealed that the IP address was assigned to an individual at 1474 North Irish Road, Davison Michigan. (*Id.*) A check conducted through the Michigan Secretary of State connected four residents, including Defendant, to the address. (*Id.*) Consequently, a federal magistrate judge authorized a warrant to search the residence. (*Id.*)

Eight (8) Internet Crimes Against Children (ICAC) task force officers executed the search warrant. (Mot. Hr'g Tr. 7, Aug. 21, 2014.) On February 8,

2

2012, Special Agent Richard Chandler; Special Agent Robert Kuykendall; Grand Blanc Township Police Officer Jason Whittey; and the other armed officers knocked on the door of the home, which was opened by Defendant. (*Id.* at 9.) Agent Chandler informed Defendant that child sexual abusive material had been downloaded from an electronic device in Defendant's home, that the officers had a search warrant for the residence, and that the officers would be seizing any electronic storage devices. (*Id.* at 10.) The officers conducted a security sweep of the home for officer safety, during which firearms were drawn by at least some officers, guns held at their sides. (*Id.* at 39.) The protective sweep lasted approximately five to ten minutes. (*Id.* at 40, 81.)

Agents Chandler and Kuykendall conducted the interrogation of the Defendant in Defendant's dining room. (*Id.* at 12.) Agent Chandler told Defendant he was not under arrest, but did not tell Defendant that he did not need to respond to questioning or that he could leave at any time. (*Id.* at 25.) He was not given *Miranda* warnings. (*Id.*) Although Defendant was not restrained, his movements were monitored by the officers. (*Id.* at 14–15.) During the interview, Defendant admitted to viewing and sharing child pornography, and told the agents that he had sold the laptop he had used to download the child sexually abusive material. (*Id.* at 17.) Agent Kuykendall stated that "[h]e needed that computer to make sure there was no manufacturing of child pornography," and informed Defendant that the

3

next step would be for the officers to search Defendant's place of employment to find the laptop and to see if he had access to computers at work. (*Id.* at 53.) Defendant asked the agents if they would still visit his employer if he produced the laptop, to which Agent Kuykendall responded that he would not. (*Id.* at 54, 147.) Defendant then informed the agents that he would contact them once he retrieved his laptop. (*Id.* at 54.) Defendant also signed a sworn statement admitting that he downloaded images of child pornography using a computer. (*Id.* at 31.)

The following day, Defendant turned his laptop over to Officer Whittey at the Davison Township Police Department. (*Id.* at 89.) A preview of the laptop was conducted after Defendant gave consent. (*Id.* at 90; Compl., ECF No. 2 at Pg. ID 4.) The preview revealed that it was the same computer that had downloaded the illicit material that prompted the investigation. (Compl., ECF No. 2 at Pg. ID 4.) Thereafter, a search warrant for a forensic examination of Defendant's laptop was executed. Fifty-six (56) digital videos and 11,786 images of child pornography were found on the storage space of Defendant's laptop. (*Id.*) Subsequently, Defendant was arrested and filed his motion. (ECF No. 18.)

### III.

Defendant first argues that his oral and written statements must be suppressed because they were obtained in violation of *Miranda* rights. (Def.'s Supp. Br., ECF No. 25 at Pg. ID 253.) "The Fifth Amendment protects a criminal

4

defendant from compelled self-incrimination, and the Supreme Court has required that a criminal defendant be apprised of certain rights prior to a custodial interrogation." *United States v. Conder*, 529 F. App'x 618, 621 (6th Cir. 2013) (citing *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)). *Miranda* requirements apply *only* when there has been such a restriction on a person's freedom as to render him in custody. *Conder*, 529 F. App'x 618, 621 (citation omitted) (emphasis added). "To differentiate between custodial and noncustodial encounters, courts consider the totality of the circumstances of the encounter, with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citing *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009)) (internal quotation marks omitted). "Courts focus on the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Id.* (internal quotation marks omitted). Other factors guiding the inquiry include:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police

5

>or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*Id.* (citing *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998)); *Panak*, 552 F.3d at 467.

Defendant points to several factors in support of his contention that he was in custody when he told the agents that he had downloaded child pornography on his laptop: (1) Defendant was never told that he could terminate the questioning or consult with counsel; (2) "the atmosphere was dominated by the officers"; (3) Defendant was isolated from his mother, their movements were monitored, and they were not able to maneuver freely around their home; and (4) the length of the interrogation (approximately 2-3 hours). (Def.'s Supp. Mot., ECF No. 25 at Pg. ID 254–55.)

Having considered the totality of the circumstances, the Court finds that Defendant unsuccessfully asserts that the government obtained the statements from him during a custodial interrogation. First, the fact that the agents did not tell Defendant that he could terminate the questioning or that he could confer with an attorney does not support his assertion that the interrogation was custodial. "It would be strange indeed, to say that a telltale sign of whether an individual must be Mirandized is whether the officer gave the individual one of the *Miranda* warnings..." *Conder*, 529 F. App'x at 623 (quoting *Panak*, 552 F.3d at 467). Defendant's argument is circular, and overemphasizes the importance of the fact

6

that the agents did not tell him that he could refuse to answer questions and could terminate the interrogation at his will. "Although these factors cut in [the defendant's] favor, [the Sixth Circuit] has never held that such admonitions are a necessary condition." *Id.*

As well, Defendant's assertion that "the atmosphere was dominated by police officers," is not relevant to a showing of custody. The lone fact that an interrogation takes place in a coercive environment is insufficient to constitute custody:

> A noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.

*United States v. Eaton*, 954 F. Supp. 2d 646, 649 (W.D. Mich. 2013) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). In stating that the interrogation took place in a home "dominated" by police officers, Defendant suggests that the interrogation took place in an atmosphere that the Sixth Circuit has deemed to be one that would naturally have coercive aspects to it. The court has deemed that such an atmosphere by itself fails to demonstrate that a defendant is in custody. *Id.*

7

Defendant argues the isolation of him and his mother, the monitoring of their movement, and their inability to move freely around the home support the conclusion that he was in police custody. These details, as they pertain to Defendant's *mothe*r, are irrelevant because "the custody inquiry considers the circumstances from the position of the person being questioned." *Conder*, 529 F. App'x at 621 (citation omitted). Further, when the ICAC task force knocked on the door, Defendant answered the door shirtless. (Hr'g Tr. at 10.) Defendant was able to go upstairs and put on a t-shirt (*Id.*), demonstrating Defendant's freedom of movement.

Moreover, even assuming that Defendant was isolated from his mother during the interrogation, "an interrogation in one's home is usually indicative of the absence of the isolation inherent in custodial interrogation." *Coomer v. Yukins*, 533 F.3d 477, 486 (6th Cir. 2008). Police encounters in Defendant's home typically do not rise to the kind of custodial situation that necessitates *Miranda* warnings. *Conder*, 529 F. App'x at 622 (citing *Panak*, 522 F.3d at 465–66).

Although Defendant asserts that the interrogation lasted approximately 2-3 hours (Hr'g Tr. at 16, 67) , the ultimate question at issue is whether Defendant "was forced to stay with [the officers]." *See United States v. Tummins*, 517 F. App'x 342, 344 (6th Cir. 2013). The record does not demonstrate that Defendant

8

was unable to end the interview. He was told that he was not under arrest, and he was never told that he could not leave. (Hr'g Tr. 15.)

Given the totality of the circumstances, Defendant has not demonstrated to the Court circumstances that "transformed his home into an interrogation cell." *See Conder*, 529 F. App'x at 622 (citing *Panak*, 552 F.3d at 466)) (further citations omitted). He fails to demonstrate that there has been such a restriction on his freedom as to render him in custody. The in-home interrogation of Defendant was custodial, and thus, he was not entitled to *Miranda* protections.

**IV.**

Alternatively, Defendant, in four sentences, very briefly argues that his statements should be suppressed because they were given involuntarily. The Sixth Circuit has resolved the requisite analysis for determining whether a confession is involuntary, holding in relevant part:

> For a defendant's confession to be involuntary and therefore procured in violation of the Fifth Amendment, "coercive police activity" must have preceded the confession. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir.1994). "This Court has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan,* 190 F.3d 416, 422 (6th Cir.1999).

9

*United States v. Hunter*, 332 F. App'x 285, 288–89 (6th Cir. 2009). Defendant asserts that for a statement to be suppressed based on involuntariness, the following elements should be met: "(1) the police engaged in coercive activity; (2) the coercion was sufficient to overbear the defendant's will; and (3) the coercion actually overbore the defendant's will." (Def.'s Supp. Br., ECF No. 25 at Pg. ID 257.) Then, in a short sentence, Defendant states that the "five factors cited above," that he previously asserted to demonstrate he was in custody, also demonstrate "the coercive nature of [his] questioning." (*Id.*) The depiction of officer conduct that was detailed in Defendant's briefs and at the hearing does not give rise to a coercive environment sufficient to overcome a defendant's will to resist. Eight (8) armed officers entered Defendant's home and conducted a protective sweep, which lasted approximately five to ten minutes. (Hr'g at 9, 40, 81.) During the search, the officers held their weapons at their side. (*Id.* at 39.). No weapons were ever pointed at Defendant. (*Id.* at 153.) After the search, all guns were put away, and some of the officers even left. (*Id.* at 17.) Defendant was told he was not under arrest. (*Id.* at 25.) He was never physically harmed, handcuffed, or restrained. (*Id.* at 153.) This information leads the Court to conclude that the interrogation and execution of the warrant were conducted in an appropriate manner, and that the environment during questioning was not out of the ordinary. As previously stated, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply

10

by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Eaton,* 954 F. Supp. 2d at 649. Even cumulatively, the factors surrounding Defendant's interrogation are insufficiently coercive to overcome his will. Thus, his statements were voluntary.

## V.

Defendant next argues that the laptop he provided to police on February 9, 2012, should be suppressed because "it was derived from the earlier, illegal police action." (Def.'s Supp. Br., ECF No. 25 at Pg. ID 258.) Having concluded that Defendant was never in custody, and that police conduct the previous day was lawful, this argument for suppressing the laptop necessarily fails.

## VI.

And finally, Defendant alternatively asserts that his laptop was provided involuntarily. "The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *United States v. Jackson*, 468 F. App'x 447, 454 (6th Cir. 2012) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1977)). Several factors are considered in determining whether consent was given voluntarily, including: "the age, intelligence, and education of the individual giving consent; whether the individual understood the right to refuse

11

to consent to search; and whether the individual understood his constitutional rights." *Id.* (citing *United States v. Lucas*, 640 F.3d 168 (6th Cir. 2011)). Although knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge to show an effective consent. *Id.* (citing Schneckloth, 412 U.S. at 227).

It is unlikely that the police were acting in a manner aggressive enough to coerce Defendant into consenting to a search of his laptop. Defendant was interrogated February 8, 2012. (Hr'g at 9.) Thereafter, he was not arrested and the officers left his home. (*Id.* at 145.) The next day, Defendant initiated conversation with law enforcement by contacting Agent Kuykendall to provide the officers with the computer. (*Id.* at 88.) Officer Whittey testified at the evidentiary hearing that Defendant met him in the parking lot of the Davison Township Police Department to offer up his laptop. (*Id.* at 90.) Officer Whittey asked Defendant "is it ok if we went through the computer," to which Defendant responded "that's fine." (*Id.*) Defendant offered no evidence to contradict this testimony.

"Consent is voluntary when it is unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *Jackson,* 468 F. App'x at 452 (quoting Lucas, 640 F.3d at 174) (internal quotations omitted).   Such was the case in the instant action. Defendant at the evidentiary hearing explicitly stated, "I know when [the officers] got up to leave I thought I wasn't under arrest at that point."

12

(*Id.* at 145.) Given that after the interrogation Defendant was certain he was not under arrest, and that Defendant voluntarily initiated subsequent contact with the officers the following day, it is clear to the Court that at the time Defendant offered his consent to search the computer, he was uninfluenced by coercion or duress, and that he gave consent with good understanding. Further, during the interrogation, Defendant asked Agent Kuykendall if the officers would have to search his place of employment if he provided officers with his laptop, (*Id.* at 57), leading the Court to believe Defendant's concern for his reputation at work, rather than coercive police conduct, motivated his decision to turn his laptop over to police.

Although Defendant was never informed that he had the right to refuse consent to the search, "the Supreme Court has explicitly rejected a rule that would require an officer to inform an individual that she has the right to refuse consent in order to render her consent voluntary." *Jackson,* 468 F. App'x at 454 (citing *Schneckloth*, 412 U.S. at 248–49). Thus, it is readily apparent to the Court that Defendant's consent to search his laptop was voluntary.

Accordingly, for the foregoing reasons, the Court finds that all evidence was

obtained constitutionally. Therefore, Defendant's motion to suppress is **DENIED**.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 15, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 15, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager